**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

JAN 12 2026

TAMMY H. DOWNS, CLERK
By: _____
DEP CLERK

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**

Malcolm Hess,

Plaintiff,

-against-

Equifax Information Services, LLC, and
Trans Union, LLC,

Defendant(s).

Case No. 3:26-cv-00016 DPM

**CLASS ACTION COMPLAINT AND**
**DEMAND FOR JURY TRIAL**

This case assigned to District Judge MARSHALL
and to Magistrate Judge KEARNEY

Plaintiff, by and through counsel, individually and on behalf of a class of all others similarly situated, pursuant to Rule 23 of the Federal Rules of Civil Procedure, as and for this Complaint against Defendants Equifax Information Services, LLC ("Equifax") and Trans Union, LLC ("Trans Union" or "Bureau") ("Equifax" and "Trans Union" each a "Bureau" and collectively, "Bureaus") respectfully sets forth, complains and alleges, upon information and belief, the following:

1. Plaintiff brings this action for damages arising from Defendant's violations of 15 U.S.C. § 1681 et seq., the Fair Credit Reporting Act ("FCRA").

2. As described more fully below, Defendant improperly reported Plaintiff as deceased on Plaintiff's credit reports.

3. Plaintiff is not deceased.

4. This is not the first time Trans Union has incorrectly reported Plaintiff as deceased.

5. Plaintiff was thereby damaged.

**JURISDICTION AND VENUE**

6. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p et seq.

7.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) as the acts and transactions occurred here, Plaintiff resides here, and Defendants transact business here.

### PARTIES

8.    Plaintiff is a resident of the State of Arkansas, County of Fulton.

9.    At all times material hereto, Plaintiff was a "consumer" as said term is defined under 15 U.S.C. § 1681a(c).

10.    Defendant Equifax is a consumer reporting agency as defined by 15 U.S.C. § 1681a (f) and conducts substantial and regular business activities in this judicial district.

11.    Equifax  is a Georgia corporation doing business in this State.

12.    Equifax  may be served with process c/o Corporation Service Company, 300 S. Spring Street, Suite 900, Little Rock, AR 72201.

13.    Equifax  is a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis and is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers to third parties for the purpose of furnishing consumer reports, as defined under 15 U.S.C. § 1681a (p).

14.    At all times material hereto Equifax  disbursed such consumer reports to one or more third parties for monetary compensation.

15.    Defendant Trans Union, LLC, is a consumer reporting agency as defined by 15 U.S.C. § 1681a (f) and conducts substantial and regular business activities in this judicial district.

16.    Trans Union is a Delaware corporation registered to do business in this State.

17.    Trans Union may be served with process c/o Corporation Service Company, 300 S. Spring Street, Suite 900 Little Rock, AR 72201.

18.    Trans Union is a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis and is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers to third parties for the purpose of furnishing consumer reports, as defined under 15 U.S.C. § 1681a (p).

19.    At all times material hereto, Trans Union disbursed such consumer reports to third parties under a contract for monetary compensation.

## FACTUAL ALLEGATIONS

20.    Plaintiff incorporates the above allegations as if set forth here.

21.    It appears that for some time each Defendant has been reporting Plaintiff as deceased.

22.    Plaintiff is not deceased.

23.    Plaintiff is very much alive.

24.    The reporting of him being deceased is inaccurate.

25.    Upon information and belief, the Social Security Administration (SSA) provides the Department of Commerce's National Technical Information Service (NTIS) a public file of death information.

26.    NTIS distributes the public file of death information, also known as the public Death Master File (DMF), to other agencies and private organizations, including consumer reporting agencies.

27.    Upon information and belief, Defendant has a data exchange agreement with the SSA and/or NTIS to receive updated death information.

28.    Upon information and belief, Defendant failed to cross-check the DMF to verify whether Plaintiff was a part of the catalog of social security numbers that belong to deceased individuals.

29.    Had each Defendant maintained reasonable procedures it would have realized that Plaintiff is not deceased.

30.    Had each Defendant attempted to timely verify if Plaintiff was deceased, it would have realized he was in fact alive.

31.    Each Defendant had been reporting this inaccurate information through the issuance of false and inaccurate credit information and consumer reports that it has disseminated to various persons and credit grantors, both known and unknown.

32.    The information described above and published by each Defendant was inaccurate.

33.    Despite the falsity and their implicit or constructive knowledge thereof, each Defendant continued to report false and inaccurate adverse information on the consumer report of the Plaintiff.

34.    Trans Union had been reporting Plaintiff as deceased some time back.

35.    After receiving one or more disputes from Plaintiff about this issue ("First Dispute"), eventually Trans Union remove the deceased reporting.

36.    Yet recently Trans Union began reporting Plaintiff as deceased again.

37.    In December 2025, Plaintiff disputed to Equifax the deceased marking and Equifax seems to have removed the marking ("Second Dispute") ("First Dispute" and "Second Dispute" each a "Dispute" and collectively, "Disputes").

38.    Despite Plaintiff's disputes, Trans Union failed to permanently correct its reporting of Plaintiff as deceased.

39.    Despite one or more of the Dispute(s), Plaintiff was being reported incorrectly as deceased by each Bureau.

40. Upon receipt of the Dispute(s) each Bureau failed to conduct a reasonable investigation.

41. It is unclear from where the deceased information originated.

42. To the extent another company was furnishing information that Plaintiff was deceased, each Bureau was required to contact them during any investigation of their information.

43. Each Bureau is required to notify each furnisher of this incorrect information ("Furnisher"), about Plaintiff's dispute(s).

44. Despite the falsity and their actual or constructive knowledge thereof, Defendant continued to report false and inaccurate adverse information on the consumer report of the Plaintiff.

45. A reasonable investigation by each Defendant would have revealed that Plaintiff was not deceased and that he was being incorrectly reported.

46. Each Defendant violated 15 U.S.C. § 1681e (b) by failing to follow reasonable procedures to assure maximum possible accuracy of the information on Plaintiff's consumer report.

47. Each Defendant violated 15 U.S.C. § 1681i (a) by failing to conduct a reasonable investigation within 30 days of receiving Plaintiff's Dispute(s).

48. Each Defendant violated 15 U.S.C. § 1681i (a)(2)(A) by failing to provide notice of the dispute(s) to the Furnisher or, in the alternative, if the Furnisher did comply with Section 1681i (a)(2)(A) then the Furnisher failed to comply with Section 1681i (a)(2)(B) by failing to provide Plaintiff all relevant information received from the Furnisher.

49.    To the extent that Plaintiff's credit information was mixed with someone else's, it appears this other person, and any entity receiving his/her credit report, received Plaintiff's credit information without a permissible purpose.

50.    Since Plaintiff is not deceased, it appears that Plaintiff's information has been mixed with another individual's.

51.    It therefore appears that Plaintiff's information is or was also appearing on reports from each Bureau regarding this other individual.

52.    When a potential creditor received a credit report for this other individual, upon information and belief Plaintiff's information appeared in that report.

53.    The potential creditors of this other individual did not have a permissible purpose for receiving Plaintiff's credit information.

54.    If this is what happened then each Bureau violated 15 U.S.C. § 1681b by impermissibly furnishing Plaintiff's credit information to one or more persons without a proper purpose.

55.    Notwithstanding this, each Defendant continued to publish and disseminate such inaccurate information to other third parties, persons, entities and credit grantors.

56.    Each Defendant's reporting of the above-referenced information continued to be inaccurate and materially misleading.

57.    Defendants knew or had reason to know the information was inaccurate.

58.    At minimum, Defendants demonstrated a reckless disregard for the true facts.

59.    These actions by Defendants caused damage to Plaintiff.

<u>Damages</u>

60.    As a result of each Defendant's failure to comply with the FCRA, Plaintiff has been damaged.

61.    Defendant's erroneous reporting affected Plaintiff's reputation, creditworthiness, and credit score.

62.    Plaintiff suffered damage to his reputation as it falsely appeared as if he was deceased.

63.    A deceased person is unable to obtain credit.

64.    A deceased person does not have a credit score.

65.    This falsity was published to numerous third parties.

66.    This negative information reflected poorly upon Plaintiff and is incompatible with the proper exercise of Plaintiff's financial affairs.

67.    Plaintiff has, inter alia, suffered damage by loss of time and money in trying to rectify Defendant's willful and negligent actions, loss of credit, loss of ability to purchase and benefit from credit, reputational harm, decreased (or complete lack of) credit score, a chilling effect on applications for credit, and the mental and emotional pain, anguish, humiliation, and embarrassment for having false information on his credit report, for credit denial, and for having others see the false credit information.

68.    At many times during this ordeal, Plaintiff did not have a credit score or credit report.

69.    A lack of credit score or report here is because Plaintiff was marked as deceased.

70.    Plaintiff was unable to obtain funding due to Defendant's actions.

71.    Due to Defendant's actions, Plaintiff was unable to secure the necessary credit.

72.    Plaintiff was emotionally distraught and damaged, and had difficulty with sleep.

73.    Being reported as deceased increased his levels of stress and anxiety.

74.    Plaintiff was unable to obtain a $60,000 HELOC from US Bank, due in whole or in part to Trans Union's actions described above.

75.    Defendants reported Plaintiff as deceased to multiple creditors thereby preventing Plaintiff from obtaining credit, including Citibank, Navy FCU, US Bank, and Capital One.

### FIRST CAUSE OF ACTION
#### (Violations of the FCRA as to each Bureau)

76.    Plaintiff incorporates the allegations above the First Cause of Action as if set forth here.

77.    This is an action for willful and/or negligent violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq.

78.    Each Defendant violated 15 U.S.C. § 1681e (b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files that each Defendant maintained or furnished concerning the Plaintiff.

79.    Each Defendant violated 15 U.S.C. § 1681i (a)(1)(A) by failing to conduct a reasonable investigation and delete the disputed tradeline within 30 days of receiving Plaintiff's dispute(s) and by failing to maintain reasonable procedures with which to verify the disputed information in Plaintiff's credit file.

80.    Each Defendant violated 15 U.S.C. § 1681i (a)(2)(A) by failing to provide notice of the Dispute to Furnisher or, in the alternative, if the Furnisher did comply with Section 1681i (a)(2)(A) then it failed to comply with Section 1681i (a)(2)(B) by failing to provide Plaintiff all relevant information received from Furnisher.

81.    Each Defendant violated 15 U.S.C. § 1681b by impermissibly furnishing Plaintiff's credit information to one or more persons without a proper purpose.

82.    Each Defendant has willfully and recklessly, or in the alternative negligently, failed to comply with the Act.

83.    The failure of each Defendant to comply with the Act includes but is not necessarily limited to:

a)    The failure to follow reasonable procedures to assure the maximum possible accuracy of the information reported;

b)    The failure to remove and/or correct the inaccuracy and derogatory credit information after a reasonable request by the Plaintiff;

c)    The failure to promptly and adequately investigate information which each Defendant had notice was inaccurate;

d)    The continual placement of inaccurate information into the credit report of the Plaintiff after being advised by the Plaintiff that the information was inaccurate;

e)    impermissibly furnishing Plaintiff's credit information to one or more persons without a proper purpose;

f)    The failure to promptly delete information that was found to be inaccurate, or could not be verified, or that the source of information had advised each Defendant to delete;

g)    The failure to take adequate steps to verify information each Defendant had reason to believe was inaccurate before including it in the credit report of the consumer; and

h)    The failure to provide notice of a dispute to the Furnisher or, in the alternative, the failure to provide Plaintiff all relevant information received from the Furnisher in response to a dispute.

84.    As a result of the conduct, action and inaction of each Defendant, Plaintiff suffered damage as described above.

85.    The conduct, action and inaction of each Defendant was willful rendering each Defendant liable for actual, statutory and punitive damages in an amount to be determined by a judge and/or jury pursuant to 15 U.S.C. § 1681n.

86.    In the alternative, the conduct, action, and inaction of each Defendant was negligent, entitling the Plaintiff to damages under 15 U.S.C. § 1681o.

87.    Plaintiff is entitled to recover reasonable costs and attorney's fees from each Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n-1681o.

88.    WHEREFORE, Plaintiff demands judgment for damages together with attorney's fees and court costs pursuant to 15 U.S.C. §§ 1681n-1681o.

## DEMAND FOR TRIAL BY JURY

89.    Plaintiff demands and hereby respectfully requests a trial by jury for all claims and issues in this complaint to which Plaintiff is or may be entitled to a jury trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment from Defendant as follows:

a)    Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class representative, and Eliyahu Babad, Esq., as Class Counsel;

b)    For actual damages provided and pursuant to 15 U.S.C. § 1681(o)(a) be awarded for each negligent violation as alleged herein;

c)    For actual damages provided and pursuant to 15 U.S.C. § 1640(a)(1);

d)    For statutory damages provided and pursuant to 15 U.S.C. § 1681n(a);

e)    For statutory damages provided and pursuant to 15 U.S.C. § 1640(a)(2);

f)  For Punitive damages provided and pursuant to 15 U.S.C. § 1681n(a)(2);

g)  For attorney fees and costs provided and pursuant to 15 U.S.C. § 1681n(a)(3), 15

U.S.C. § 1681o(a)(2) and 15 U.S.C. § 1640(a)(3);

h)  For any such other and further relief, as well as further costs, expenses and

disbursements of this action as this Court may deem just and proper.

Dated:  December 18, 2025

*E Babad*

Eliyahu Babad, Esq.
STEIN SAKS, PLLC
One University Plaza, Suite 620
Hackensack, NJ 07601
(201) 282-6500 x121
EBabad@SteinSaksLegal.com

*Attorneys for Plaintiff*